**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| MICHAEL FURLOW and CATHY FURLOW, | ) ) ) | |
| Appellants, | ) ) | No. 2:20-cv-3820-DCN |
| vs. | ) ) | **ORDER** |
| BRIAN J. MACDONALD, | ) ) ) | |
| Appellee. | ) ) | |

This matter comes before the court on appellants Michael Furlow ("Mr. Furlow") and Cathy Furlow's ("Mrs. Furlow") (collectively "the Furlows") appeal from the United States Bankruptcy Court's ("Bankruptcy Court") order and judgment in In re Macdonald, No. 19-06512-JW (Bankr. D.S.C. 2019). ECF No. 1 at 4–41. For the reasons set forth below, the court affirms the judgment of the Bankruptcy Court.

## I. BACKGROUND

This appeal from the Bankruptcy Court arises out of the Furlows' partition action against appellee Brian J. Macdonald ("Mr. Macdonald"), concerning their jointly owned property, 5718 Captain Kidd Road in Hollywood, South Carolina (the "Charleston Property"). At the time of the Charleston Property's purchase, Mr. Macdonald was the Furlows' son-in-law by virtue of his marriage to their daughter, Leigh Macdonald ("Mrs. Macdonald") (together with Mr. Macdonald, "the Macdonalds"), who died in February 2020. The Bankruptcy Court held a fact-finding trial on August 24, 2020 and consequently issued an order resolving the instant dispute on September 15, 2020. ECF No. 1 at 4–27 (the "Bankruptcy Court Order"). The Furlows do not dispute any facts

1

found by the Bankruptcy Court as stated in the Bankruptcy Court Order. See ECF No. 10 at 7 (seeking review of the bankruptcy court's "legal conclusions"). Accordingly, the court considers the facts undisputed.

The Bankruptcy Court found that the Furlows "have significant means and have generously benefitted their children and their families through trust funds, the payment of educational expenses and housing costs." Bankruptcy Court Order at 2. For example, in 2004 the Furlows assisted the Macdonalds in purchasing a home in Miami, Florida (the "Florida Property"). Mr. Furlow contributed half of the purchase price in exchange for a one-half interest in the property, and the Macdonalds contributed the remainder of the purchase price from their savings and by taking out a mortgage loan, for which they received the remaining one-half interest. Mr. Furlow and the Macdonalds memorialized this agreement in a contract. Shortly thereafter, Mrs. Macdonald began developing serious issues with substance abuse. Motivated by Mrs. Macdonald's desire to escape the Miami lifestyle and a new job opportunity for Mr. Macdonald, the Macdonalds relocated to Virginia in 2008. Again, Mr. Furlow assisted the Macdonalds in purchasing their new home (the "Virginia Property"). This time, Mr. Furlow contributed one half of the purchase price for a 55% interest in the Virginia Property, and the Macdonalds contributed the remainder of the purchase price for the remaining interest, using funds from the sale the Florida Property.

In Virginia, Mrs. Macdonald's substance abuse issues regrettably escalated, and Mr. Macdonald suffered a work-related injury, limiting his family's income to that which he received from retirement disability benefits—approximately $30,000 per year. Consequently, the Furlows urged the Macdonalds to move to Charleston, South Carolina

2

so that the Furlows could more easily provide support for the Macdonalds and their children. The Bankruptcy Court found that the Furlows "enticed" the Macdonalds by offering to purchase the Charleston Property, a "dream house with deep water accessibility [worth] approximately $1.2 million[.]" Bankruptcy Court Order at 4. On August 26, 2015, the Furlows paid the entire purchase price of $1,224,455 for the Charleston Property, and the grantor issued a deed to the Furlows and the Macdonalds as tenants-in-common (the "Deed"). As the Bankruptcy Court noted, "The Deed provides no further information regarding the co-tenants' share of the Charleston Property, and there was no separate written agreement addressing its purchase and the parties' respective interests." Id. The Bankruptcy Court found that the Furlows "had no intention to occupy, use, live in or benefit by the Charleston Property and that the intention upon its purchase was for the property to provide a home for the Macdonalds and their children." Id. at 6. One year later, the Virginia Property sold, and the Macdonalds paid the Furlows the net proceeds of the sale, $77,589, approximately 6.35% of the Charleston Property purchase price. For the next year and a half, the Macdonalds and their children lived in the Charleston Property as their primary residence.

In early 2018, the South Carolina Department of Social Services required Mrs. Macdonald to leave the Charleston Property, and she moved in with the Furlows as a result. On February 21, 2018, Mrs. Macdonald filed for divorce and, during the resulting proceedings, agreed to permit Mr. Macdonald to retain custody of their children and to exclusively use and occupy the Charleston Property. Less than one month later, on March 19, 2018, the Furlows filed an action against the Macdonalds in the Charleston County Court of Common Pleas seeking to recover their interest in the Charleston

3

Property by way of court-ordered partition (the "Partition Action"). ECF No. 4-1 at 4–8. The Furlows subsequently amended their complaint, adding a claim for unjust enrichment. On April 11, 2018, while in the care and support of the Furlows, Mrs. Macdonald executed a quitclaim deed, transferring her interest in the Charleston Property to the Furlows for $38,794.50—an amount equal to half of the proceeds the Macdonalds received from the sale of the Virginia Property and transferred to the Furlows in August 2016. One year later, the Furlows dismissed Mrs. Macdonald from the Partition Action. On December 19, 2019, shortly before a trial was set to commence in the Partition Action, Mr. Macdonald filed a petition for relief in the Bankruptcy Court under Chapter 13 of the Bankruptcy Code. Accordingly, the Partition Action was stayed. In February 2020, Mrs. Macdonald died. On March 16, 2020, the parties, by consent, removed the Partition Action to the Bankruptcy Court as an adversary proceeding to Mr. Macdonald's bankruptcy action, pursuant to 28 U.S.C. § 1452.

After resolving pretrial motions, the Bankruptcy Court held a fact-finding bench trial to resolve the Partition Action and the unjust enrichment claim. On September 15, 2020, Bankruptcy Judge John E. Waites issued an order, the Bankruptcy Court Order, and consequent judgment, ECF No. 1 at 26–27. Judge Waites held that, at the time of the Charleston Property's conveyance, the Macdonalds and the Furlows took the property as tenants-in-common, triggering a presumption of ownership in equal shares. After considering the testimony and other evidence the Bankruptcy Court received at the bench trial, Judge Waites found that the Furlows failed to overcome that presumption. Therefore, the Bankruptcy Court concluded, "[The Furlows] hold a 75% interest (based upon their initial 50% interest and the 25% they acquired from Mrs. Macdonald)[,] and

4

[Mr. Macdonald] holds a 25% interest in the Charleston Property." Bankruptcy Court Order at 17.  Further, the Bankruptcy Court concluded that the Furlows intended the Macdonalds' 50% interest in the Charleston Property to be a gift.  Id. at 17 n.11.  Finally, the Bankruptcy Court determined that neither party is entitled to attorneys' fees.  Id. at 19–20.  Thereafter, the Furlows filed a motion to reconsider, which the Bankruptcy Court denied on October 15, 2020.  ECF No. 1 at 29–41.

On October 30, 2020, the Furlows filed a notice of appeal with this court pursuant to 28 U.S.C. § 158(a) and Fed. R. Bankr. P. 8003.  Id. at 1–2.  On February 3, 2021, the Furlows filed an appellate brief.  ECF No. 10.  On April 2, 2021, Mr. Macdonald filed a response brief, ECF No. 14, and on April 16, 2021, the Furlows filed a reply brief, ECF No. 16.  Pursuant to Fed. R. Bankr. P. 8013(c), the court has determined that oral argument would not aid its resolution of this appeal.  Thus, the matter is now ripe for the court's review.

## II.  STANDARD

District courts have jurisdiction over appeals from final judgments and orders of the bankruptcy courts.  28 U.S.C. § 158(a); see e.g., In re Kirkland, 600 F.3d 310, 314 (4th Cir. 2010).  Upon review, the court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." In re Infinity Bus. Grp., Inc., 628 B.R. 213, 226 (D.S.C. 2021) (quoting Williams v. Colonial Penniman, LLC, 582 B.R. 391, 396 (E.D. Va. 2018)).  "The standard of review of a bankruptcy appeal by a district court is the same as when a court of appeals reviews a district court proceeding."  Id. (citing 28 U.S.C. § 158(c)(2)).  Consequently, a district court reviews the bankruptcy court's findings of fact for clear error, In re Kirkland, 600

F.3d at 314, and its legal conclusion de novo, In re White, 487 F.3d 199 (4th Cir. 2007).

A finding of fact is clearly erroneous when "the entire record demonstrates convincingly

to the reviewing court that a mistake has been committed." Infinity Bus. Grp., 628 B.R.

at 226 (quoting United States v. Hall, 664 F.3d 456, 462 (4th Cir. 2012)).  Further, the

court reviews mixed findings of law and fact "under a hybrid standard, applying to the

factual portion of each inquiry the same standard applied to questions of pure fact and

examining de novo the legal conclusions derived from those facts." Id. (quoting Gilbane

Bldg. Co. v. Fed. Reserve Bank of Richmond, Charlotte Branch, 80 F.3d 895, 905 (4th

Cir. 1996)) (internal quotation marks omitted).

### III.  DISCUSSION

The Furlows appeal the Bankruptcy Court Order on three grounds.  First, the

Furlows argue that the Bankruptcy Court erred in holding that they failed to rebut the

presumption of ownership in equal shares.  Second, the Furlows contend that the

Bankruptcy Court erroneously found that they intended Mr. Macdonald's share of the

Charleston Property as a gift.  Finally, the Furlows posit that they are entitled to the

attorneys' fees and costs that they have incurred in bringing the Partition Action.

Disagreeing on each front, the court affirms the judgment of the Bankruptcy Court.

### A. Presumption of Ownership in Equal Shares

The Bankruptcy Court determined that the Charleston Property "was intended by

all to be equally owned and used and possessed exclusively by the Macdonalds and their

children as their residence." Bankruptcy Court Order at 17.  Accordingly, the

Bankruptcy Court concluded,

> After considering the weight and credibility of the evidence, [the Furlows]
> have failed to demonstrate that the Macdonalds' interest in the Charleston

> Property was conditioned at the time of the purchase on their payment of
> one-half of the purchase price of the property. [T]he Court finds that [the
> Furlows] have failed to rebut the presumption under the Deed that [the
> Furlows], [Mr. Macdonald], and Mrs. Macdonald, as tenants-in-common,
> were to have equal shares in the Charleston Property.

Id. The Furlows now contend that the evidence they presented "rebutted any presumption of equal shares under the [D]eed." ECF No. 10 at 14. Further, the Furlows argue that the Bankruptcy Court's holding is erroneous because "[e]quity weighs heavily in the favor of the Furlows in this case." Id. at 15. For the reasons discussed below, the court disagrees.

In South Carolina, "[a] partition action is an equitable action[.]" Zimmerman v. Marsh, 618 S.E.2d 898, 900 (S.C. 2005). In resolving such an action, a court must first determine the parties' respective interests in the subject property. Marichris, LLC v. Derrick, 682 S.E.2d 301, 305 (SC. Ct. App. 2009). "Where two or more persons take as tenants in common under an instrument silent as to their respective shares, there is a presumption that their shares are equal." Id. at 305–06 (quoting 20 Am. Jur. 2d Cotenancy and Joint Ownership § 116). The presumption of ownership in equal shares may be rebutted, of course, by evidence that the parties intended to take unequal interests. Id. Although evidence that the parties contributed unequally to the purchase price "may" rebut the presumption, such evidence is not conclusive and salient only to the extent that it reflects the parties' intent. Id. (emphasis added). Ultimately, the party challenging the presumption of ownership in equal shares bears the burden of proof. Id.

The court admits some difficulty discerning the exact nature of the Furlows' argument, and even more difficulty determining which standard it prompts the court to employ. Although the Furlows contend that the first part of their argument—that they

7

have presented sufficient evidence to rebut the presumption of ownership in equal

shares—raises a purely legal question, subject to de novo review, ECF No. 10 at 7, the

issue is not so clear cut.[1]  On the one hand, whether a party presents sufficient evidence

to rebut a legal presumption, accepting all underlying facts as true, seems to call for a

legal conclusion.  On the other, South Carolina law is clear that rebutting the presumption

of ownership in equal shares requires a finding of contrary intent.  Marichris, 682 S.E.2d

at 305–06.  Undoubtedly, a court's determination of intent constitutes a factual finding.

See, e.g., E. Bridge Lofts Prop. Owners Ass'n, Inc. v. Crum & Forster Specialty Ins. Co.,

2015 WL 12831694, at *5 (D.S.C. Dec. 22, 2015) ("[T]he question of the parties' intent

is a factual issue usually left for the jury[.]").  Thus, the issue of whether the Furlows

rebutted the presumption of ownership in equal shares or, put differently, whether the

Furlows demonstrated that the parties intended to own the Charleston Property in unequal

shares, sits somewhere along the blurred line between factual finding and legal

conclusion.  In this case, determining the precise nature of the issue and thus applicable

standard would ultimately be an exercise in academic semantics.  Whichever standard the

court applies to the Bankruptcy Court's holding—be it de novo, clear error, abuse of

discretion, or substantial evidence—the court's conclusion is the same: the Bankruptcy

Court got it right.

In arguing that they sufficiently rebutted the presumption of ownership in equal

shares, the Furlows rely heavily on the fact that they "paid the entire purchase price of

---

[1] To be clear, the Furlows have not challenged any of the Bankruptcy Court's
factual findings as clearly erroneous and instead challenge only the Bankruptcy Court's
"legal conclusion" that the presumption of ownership in equal shares controls in this case.
ECF No. 10 at 7.

$1,224,455 [for the Charleston Property] at the time of closing." ECF No. 10 at 14. To the extent that the Furlows contend that this undisputed fact alone rebuts the presumption of ownership in equal shares as a matter of law, the court dispels that notion. The South Carolina Court of Appeals explicitly noted that evidence of unequal contributions "may" rebut the presumption of ownership in equal shares. Marichris, 682 S.E.2d at 305 (emphasis added). Notwithstanding that guidance, the Court of Appeals in that very case ultimately found that the parties' unequal contributions to the purchase price failed to sufficiently rebut the presumption. Id. There, one co-tenant paid 99.5% of the purchase price for a property that he and his brother owned as tenants-in-common. Despite the egregiously unequal contributions to the purchase price, the Court determined that the presumption of ownership in equal share controlled because the co-tenant brothers intended to own the property in equal shares at the time its purchase. Id. at 306. Based on that intent, the Court found that each tenant-in-common owned 50% of the property. Id. The circumstances here are no different. Although the Furlows contributed the entire purchase price at the time of conveyance, the Bankruptcy Court concluded that the parties intended to own the property jointly, meaning that the Furlows failed to rebut the presumption of ownership in equal shares. As the court discusses below, that finding is properly rooted in the evidentiary record.

The Furlows also rely upon other pieces of evidence to demonstrate that they overcame the presumption of ownership in equal shares triggered by the co-tenancy. In addition to the fact that they paid the entire purchase price for the Charleston Property, the Furlows note that they and the Macdonalds had a history of jointly purchasing property pursuant to agreements that the Furlows would contribute half of the purchase

9

price and the Macdonalds would contribute the remaining half through a mortgage. They

also state that "the circumstances leading up to the Charleston Property purchase

precluded the Macdonalds from making their usual monetary contribution at the time of

closing." ECF No. 10 at 14. While this evidence, standing alone, might be sufficient to

overcome the presumption of ownership in equal shares, the record contains significant

and persuasive evidence to the contrary, which provided a proper basis for the

Bankruptcy Court to conclude that the Furlows failed to rebut the presumption of

ownership in equal shares. The Furlows' argument fails because it ignores this evidence.

For example, the Bankruptcy Court noted that "unlike the Virginia Property and

the [Florida] Property," "there was no written agreement between the parties for the

Charleston Property." Bankruptcy Court Order at 13. In other words, the Furlows and

Macdonalds memorialized the Macdonalds' obligation to contribute to the purchase price

of the Virginia and Florida Properties, but failed to do the same with respect to the

Charleston Property. Further, the Bankruptcy Court reasoned that "the circumstances

surrounding the Macdonalds' move to South Carolina also suggest that their interest in

the Charleston Property was not conditioned upon their equal contribution to the purchase

price," explaining that the Furlows sought to entice the Macdonalds to move to

Charleston so that the Furlows could more easily support their daughter's family. Id. at

15. The Bankruptcy Court reasoned that the Furlows must have known that the

Macdonalds could not afford to meaningfully contribute to a property of such great

expense, given that the Macdonalds' income at the time was approximately $30,000 per

year. The Bankruptcy Court also relied upon Mrs. Furlow's testimony that she "never

intended to receive a financial benefit from the Charleston Property," id., and the fact that

the Furlows similarly gifted their other daughter, Mrs. Macdonald's sister, total

ownership of a "dream house" for no consideration, id. at 3. Finally, the Bankruptcy

Court relied on the Furlows' "long-term history of support for the Macdonalds and their

children, including the establishment of a trust and providing assistance with housing and

the educational expenses of the children[.]" Id. at 10. All this evidence supports the

Bankruptcy Court's conclusion that the Furlows and the Macdonalds intended to take the

Charleston Property in equal shares, despite the Furlows' payment of the entire purchase

price. In other words, the Bankruptcy Court had a legally sufficient basis to conclude

that the Furlows failed to rebut the presumption of ownership in equal shares.

The second half of the Furlows' argument on this front urges the court to review

the Bankruptcy Court Order in light of the equities of the circumstances. The Bankruptcy

Court's holding, they contend,

> is clearly an inequitable result for parties who have invested in a property
> together. Equity regards substance over form and imputed an intent on the
> Macdonalds to fulfill their obligation. A fair and just division of the
> Charleston Property should follow the parties' past governance of their joint
> home purchases and provide the Furlows with a 96.83% interest.

ECF No. 10 at 11–12. The court finds that the Bankruptcy Court did not err.

Again, the court must pause to determine the applicable standard of review. As

the Furlows correctly acknowledge, the relevant issue—the just partition of property—

sounds in equity under South Carolina law. ECF No. 10 at 13 ("Under South Carolina

law, a partition action is one in equity . . . .") (citing Zimmerman, 618 S.E.2d at 900).

Accordingly, the Bankruptcy Court's holding is rooted in considerations of fairness and

equity. An equitable determination differs materially from a legal conclusion because the

former rests on principles of fairness, credibility determinations, and evidentiary nuances,

11

while the latter does not. Because "trial judges are better positioned to assess such

questions as witness credibility," United States v. Mallory, 765 F.3d 373, 382 (3d Cir.

2014), appellate law affords a trial judge's equitable determination greater latitude,

Pender v. Bank of Am. Corp., 736 F. App'x 359, 365 (4th Cir. 2018).[2]

In the context of bankruptcy appeals, the vast majority of district courts and courts

of appeal hold that "[e]quitable determinations are within the sound discretion of the

bankruptcy judge and will not be disturbed absent abuse of discretion." In re M.J.

Waterman & Assocs., Inc., 227 F.3d 604, 607 (6th Cir. 2000); see also In re Flanagan,

503 F.3d 171, 179–80 (2d Cir. 2007) ("The ultimate determination of whether or not to

impose an equitable remedy . . . is reviewed for abuse of discretion."); In re Eagle-Picher

Indus., Inc., 285 F.3d 522, 527 (6th Cir. 2002) ("[T]he bankruptcy court's equitable

determinations are reviewed for an abuse of discretion."); In re Myrvang, 232 F.3d 1116,

1121 (9th Cir. 2000) ("Because the 'balance of the equities' test required the bankruptcy

court to reach an equitable conclusion rather than a factual or legal one, we review the

decision for an abuse of discretion."); In re Cont'l Airlines, 91 F.3d 553, 560 (3d Cir.

1996) (finding that because the doctrine of equitable mootness "involves a discretionary

balancing of equitable and prudential factors," the bankruptcy court's decision thereon

should be reviewed for an abuse of discretion); In re Massenburg, 554 B.R. 769, 773 (D.

Md. 2016) (holding that "[w]hether the bankruptcy court appropriately balanced the

equities . . . is reviewed on appeal for abuse of discretion"); In re McKenzie, 497 B.R.

514, 518–19 (E.D. Tenn. 2013) ("Abuse of discretion is [ ] the proper standard for any

---

[2] The law instructs the court to review appeals from the Bankruptcy Court "in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts." 28 U.S.C. § 158(c)(2).

equitable determinations of the bankruptcy court.").[3]  Accordingly, the court reviews the

Bankruptcy Court's equitable determination for an abuse of discretion, pursuant to which

"[t]he question is not how the reviewing court would have ruled, but rather whether a

reasonable person could agree with the bankruptcy court's decision; if reasonable persons

could differ as to the issue, then there is no abuse of discretion." Massenburg, 554 B.R.

at 773 (quoting M.J. Waterman & Assocs., 227 F.3d at 608).

After reviewing the record, the court finds that the Bankruptcy Court reached an

equitable result.  As the court discussed above, the record contains significant and

persuasive evidence that the Furlows and the Macdonalds intended at the time of

purchase to own the Charleston Property in equal shares, despite the Furlows' payment of

the purchase price.  As the Bankruptcy Court discussed, the Furlows never intended to

occupy or use the Charleston Property and instead intended it to be used and enjoyed

exclusively by the Macdonalds and their children.  The Furlows claimed full ownership

of the Charleston Property only after the Macdonalds' marriage ended.  Fairness,

mirroring the law, dictates that the Furlows' intent at the time of purchase should control.

Moreover, the court notes that Mr. Macdonald is disabled, a single parent to his children,[4]

and a Chapter 13 debtor.  Conversely, Mr. Furlow is a "successful real estate developer,"

with significant means and a long history of benefiting his children.  In short, the

---

[3] Indeed, South Carolina courts employ a similar standard of review with respect
to partition actions, recognizing that while a court of appeals may "take its own view of
the evidence," it should not "disregard the findings at trial or ignore the fact that the trial
judge was in a better position to assess the credibility of the witnesses." Laughon v.
O'Braitis, 602 S.E.2d 108, 110 (S.C. Ct. App. 2004).
        [4] The Bankruptcy Court noted that the Furlows "have apparently discontinued the
payment of educational expenses for the Macdonalds' children." Bankruptcy Court
Order at 6 n.5.

Bankruptcy Court's determination reflects the equities of the circumstances.  Moreover,

the court is especially wary of substituting its judgment for that of the Bankruptcy Court,

given that the latter had the benefit of receiving testimony and making credibility

determinations during the fact-finding bench trial.  For all these reasons, the court finds

that the Bankruptcy Court did not err.[5]

## B.  Determination of a Gift

In addition to finding that the Furlows did not overcome the presumption of

ownership in equal shares, the Bankruptcy Court also concluded:

> Ultimately, while the Court finds [the Furlows] have not overcome their
> burden regarding the presumption of equal shares in the Deed, the Court
> nonetheless also finds, based upon the weight and credibility of the evidence
> presented, including the testimony of [Mr. Macdonald]; the lack of a written
> agreement or any action by [the Furlows] to enforce such an alleged
> agreement for multiple years after the closing of the Charleston Property;
> the pattern, nature and history of [the Furlows]' financial support to the
> Macdonalds; and the circumstances surrounding the Macdonalds' move
> from Virginia to South Carolina, that the parties intended a gift to Mrs.
> Macdonald and [Mr. Macdonald] of a 25% interest each in the Charleston
> Property when the Deed was executed.

Bankruptcy Court Order at 17 n.11.  The Furlows now challenge this finding on two

grounds.  Disagreeing with each, the court affirms the Bankruptcy Court's finding.

First, the Furlows argue that "they did not gift a percentage share of the property

to Mr. Macdonald since they had no intent that the property be a gift[.]"  ECF No. 10 at

16.  Although they present this argument as a challenging a legal conclusion, it

challenges a finding of fact.  As the court has indicated, a determination of intent

constitutes a factual finding.  As the court has also discussed, the Bankruptcy Court

---

[5] Even if the court were to review the Bankruptcy Court's equitable determination
under a more stringent standard, such as de novo, it would nevertheless conclude that the
Bankruptcy Court reached a just conclusion and thus committed no error.

rested its finding of the parties' intent upon substantial and convincing evidence.

Because the Bankruptcy Court stood in the best position to view the evidence and

determine its credulity, the court will not disturb its factual findings absent clear error. In

re Kirkland, 600 F.3d at 314. The court need not rehash the evidence to conclude that the

Bankruptcy Court's finding with respect to the parties' intent is not clearly erroneous.

Second, the Furlows argue that the Bankruptcy Court misapplied the law because,

they contend, a presumption of a gift does not arise where a parent-in-law makes a

purchase on behalf of a son-in-law. Instead, the Furlows argue, when a parent-in-law

pays the purchase price for property conveyed to a son-in-law, a presumption of a

resulting trust arises in favor of the parent-in-law who paid the purchase price. The

Furlows are correct on the law in both respects. Although South Carolina law presumes

that a conveyance paid for by a parent and made to a child was intended as a gift, Hayne

Fed. Credit Union v. Bailey, 489 S.E.2d 472, 475 (S.C. 1997), the presumption does not

attach with respect to conveyances made solely to in-laws, Jocoy v. Jocoy, 562 S.E.2d

674, 676 (S.C. Ct. App. 2002) ("[N]o gift is presumed to a son-in-law or daughter-in-

law."). With respect to in-laws, South Carolina courts fall back on "the general rule":

"when real estate is conveyed to one person and the consideration paid by another, it is

presumed that the party who pays the purchase money intended a benefit to himself, and

accordingly a resulting trust is raised in his behalf." Hayne, 489 S.E.2d at 475.

Nevertheless, there are two fatal problems with the Furlows' argument. First,

South Carolina law instructs a court to determine whether a conveyance constitutes a gift

by ascertaining the parties' intent at the time of the conveyance. See id. (determining that

a conveyance—at the time it was made—"was not intended as a gift"). At the time of the

conveyance of the Charleston Property, the Furlows paid the purchase price on behalf of both of the Macdonalds, Mrs. Macdonald being the Furlows' daughter. While the law does not recognize a gift presumption with respect to conveyances made solely to in-laws, see Jocoy, 562 S.E.2d at 676, the majority of courts hold that the presumption does arise where the conveyance is made jointly to a child and a child-in-law, Mermon v. Mermon, 390 A.2d 796 (Pa. Super. 1978) (holding that a gift presumption arose where property was purchased by groom's parents and transferred to both bride and groom); Cohen v. Raymond, 128 A.3d 1072, 1074 (N.H. 2015), as modified (Mar. 14, 2016) (holding that a "weak presumption" applies to a conveyance made jointly to child and child-in-law); In re Marriage of Kendra, 815 N.E.2d 22, 25 (Ill. App. 2004) (applying gift presumption to a conveyance from parents to daughter and son-in-law). Therefore, a presumption that the Macdonalds' interest in the Charleston Property was a gift indeed arose because the Furlows conveyed a half-interest therein jointly to the Macdonalds.

Further, although the Furlows again argue that this issue is purely legal and therefore warrants de novo review, the South Carolina Supreme Court has specifically noted that "[t]his presumption . . . is one of fact and not of law and may be rebutted by parol evidence or circumstances showing a contrary intention." Id. at 476. Accordingly, the Bankruptcy Court's finding that the Furlows intended a gift constitutes a factual finding, not a conclusion of law. As the court has already determined, the Bankruptcy Court's finding regarding the Furlows' intent is well-rooted in the evidentiary record and therefore not clearly erroneous. Thus, the court rejects the Furlows' second ground on appeal.

### C. Attorneys' Fees

Finally, the Furlows posit that the Bankruptcy Court erred in declining to award them attorneys' fees. District courts review a bankruptcy court's decision regarding attorneys' fees for an abuse of discretion, which occurs where "the bankruptcy court relied upon clearly erroneous findings of fact, improperly applied the governing law[,] or used an erroneous legal standard." In re Berry, 2014 WL 4471438, at *1 (E.D. Mich. Sept. 4, 2014) (quoting In re Williams, 357 B.R. 434, 437 (B.A.P. 6th Cir. 2007)).[6] For all the reasons discussed above, the court finds that the Bankruptcy Court did not abuse its discretion. Thus, the court denies the Furlows' final ground on appeal.

## IV. CONCLUSION

For the foregoing reasons the court **AFFIRMS** the order and judgment of the Bankruptcy Court.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 15, 2021**
**Charleston, South Carolina**

---

[6] South Carolina law follows suit. See S & W Corp. of Inman v. Wells, 321 S.E.2d 183, 185 (S.C. 1984) ("[T]he fixing and assessing of attorneys' fees" under S.C. Code Ann. § 15-61-110 "is a matter within the circuit court's discretion, the exercise of which will not be disturbed absent a showing of abuse thereof.").